Richard Andrew GORDON,
Appellant–Plaintiff,

v.

PURDUE UNIVERSITY,
Appellee–Defendant.

No. 79A02–0606–CV–457.

Court of Appeals of Indiana.

March 20, 2007.

John R. Price, Indianapolis, IN, Attorney for Appellant.

David A. Starkweather, Stuart & Branigin Lafayette, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Richard Andrew Gordon appeals the trial court's dismissal of his first amended complaint against Purdue University ("Purdue") and the trial court's denial of his request to file a second amended complaint. Gordon raises two issues, which we restate as:

I. Whether the trial court abused its discretion by dismissing Gordon's first amended complaint; and

II. Whether the trial court abused its discretion by denying Gordon's request to file a second amended complaint.

We affirm.

The relevant facts follow. Gordon was an economics doctoral student at Purdue University, and Dr. Charalambos Aliprantis was his major professor/major advisor. After Gordon received "U" or "Unsatisfactory" grades for his thesis research course in the spring and fall of 2001 and the spring of 2002, Dr. Aliprantis resigned from Gordon's advisory committee. The Economics Policy Committee met and ordered Gordon to complete three tasks by June 26, 2002, or be terminated from the doctoral program. The tasks included: (1) finding a new faculty member to serve as his major professor on his advisory committee; (2) developing a plan and timetable for completing his thesis; and (3) submitting a copy of the plan and timetable to the Economics Policy Committee. Gordon requested and received an extension of time until September 2, 2002, but failed to complete the tasks. On September 3, 2002, the Economics Policy Committee dismissed Gordon from the doctoral program. Gordon appealed the dismissal through Purdue's administrative process, but the dismissal was upheld.

In July 2004, Gordon filed a complaint against Purdue and Dr. Aliprantis (collectively, "Defendants") for breach of contract, negligence, and defamation. Gordon alleged that his contractual relationship with Purdue was "effectively set out in Purdue's *Policies and Procedures Manual for Administering Graduate Student Programs* and/or the *Purdue University Bulletin*." Appellant's Appendix at 35. According to Gordon, Purdue "failed to comply with its own obligations as set out in the *Policies and Procedures Manual for Administering Graduate Student Programs* and/or the *Purdue University Bulletin*, thereby breaching its contractual obligations to [Gordon]." *Id.* Gordon alleged that Purdue failed to provide him with "a full or adequate Advisory Committee" and failed to "ensure that his Major Professor/Advisor and /or Advisory Committee were competent and/or actually fulfilling their purpose in directing and supervising [Gordon's] doctoral research efforts to ensure his progress toward and ability to obtain a Ph. D." *Id.* Gordon also alleged that Purdue had "deprived [him] of due process, as he was not provided with an adequate or meaningful opportunity for hearing before the termination occurred" and that Purdue failed in its contractual obligations by allowing Dr. Aliprantis to issue a "U" grade for an impermissible or inappropriate reason. *Id.* at 36. Finally, Gordon also alleged that Purdue and Dr. Aliprantis had a duty to him and were negligent and that Purdue and Dr. Aliprantis defamed him.

Purdue and Dr. Aliprantis filed a motion for judgment on the pleadings. The trial court granted the Defendants' motion as to the negligence and defamation claims but not as to the breach of contract claim. The Defendants then filed a motion for summary judgment regarding the breach of contract claim. On July 8, 2005, the

trial court granted summary judgment in favor of Dr. Aliprantis because he was "a public employee acting in the course of his employment...." *Id.* at 12. As to Gordon's breach of contract claim against Purdue, the trial court found:

> Purdue University is an educational institution and the alleged acts complained of by [Gordon] consisted of an academic judgment. Accordingly, the principles set forth in *Neel v. Indiana University Board of Trustees,* 435 N.E.2d 60[7] (Ind.Ct.App.1982) apply: "absent a showing of bad faith on the part of the University or a professor, the Court will not interfere. The good faith judgment model both maximizes academic freedom and provides an acceptable approximation of the educational expectations of the parties." *Id.* at 611, quoting Note, Contract Law and the Student–University Relationship, 48 Ind. L.J. 253, 263 (1973). Furthermore, the Court's review of an administrative decision of an educational institution is "not a hearing de novo. Rather, its sole function [is] to determine whether the action was illegal, or arbitrary and capricious. In doing so it must accept the evidence most favorable to support the administrative decision." *Riggin v. Board of Trustees of Ball State University,* 489 N.E.2d 616, 625 (Ind.Ct.App. 1986).
>
> Summary judgment is granted in favor of defendant Purdue University and against [Gordon] on two issues: The decision of defendant Purdue University was not arbitrary and capricious and [Gordon] was not deprived of due process. There is substantial evidence that [Gordon] did not make satisfactory educational progress, and he received the hearing to which he was entitled.
>
> Summary judgment is denied, however, on the issue of whether defendant Purdue University or one of its agents acted in bad faith. The parties have designated conflicting evidence concerning the material facts and inferences that should be drawn from them. Specifically [Gordon] claims that Dr. Aliprantis and Purdue University refused to provide the guidance and assistance necessary for him to meet his academic objectives, and that they were contractually obligated to do so. He has designated evidence which supports this claim. Defendants deny both the refusal and the obligation and have designated evidence in support of their position. The Court finds that there is a disputed issue of material fact on the issue of whether or not the defendant Purdue University or its agent was guilty of a bad faith breach of contract.
>
> Summary judgment is denied with respect to the issue of whether defendant Purdue University or one of its agents acted in bad faith in terminating [Gordon's] status as a graduate student.
>
> Summary judgment is granted in favor of defendants and against [Gordon] on all other issues.

Appellant's Appendix at 12–14.

Purdue then filed a motion to clarify and reconsider. On September 1, 2005, the trial court granted the motion in part and denied it in part as follows:

> The Court now grants the defendant Purdue University's motion to clarify by correcting the penultimate paragraph of its Order of July 8, 2005 to read as follows:
>
> > "Summary judgment is denied with respect to the issue of whether Defendant Purdue University or one of its agents acted in bad faith by refusing to provide the guidance and assistance necessary for [Gordon] to meet his academic objectives, and whether Pur-

due University or one of its agents were contractually obligated to do so."

The Defendant's motion to reconsider is granted in part and denied in part. There are material factual questions concerning what Purdue University's obligation was to [Gordon], and whether there was a good faith effort to honor it. There is a contractual relationship between student and school. *Ross v. Creighton University*, 957 F.2d 410, 416. "To state a claim for breach of contract, the Plaintiff must do more than simply allege that the education was not good enough. Instead he must point to an identifiable contractual promise that the Defendant failed to honor.... Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but, rather an objective assessment of whether the institution made a good faith effort to perform on its promise." *Id.* at 416–17. After examining [Gordon's] Complaint, the Court has determined that [Gordon] has neither alleged that the Defendants acted in bad faith nor conceded that they acted in good faith. The issue of bad faith was therefore not presented by the pleadings. Rather than grant the motion for summary judgment, the Court dismisses so much of the Complaint as remains. [Gordon] is granted leave to file an amended complaint within 10 days hereof, limited to the issue of a bad faith breach of contract.

Appellant's Appendix at 15–16.

In accordance with the trial court's order, Gordon filed a First Amended Complaint for Damages and alleged a claim of bad faith breach of contract against Purdue. Again, Gordon alleged that his contractual relationship with Purdue was "effectively set out in Purdue's *Policies and Procedures Manual for Administering Graduate Student Programs* and/or the *Purdue University Bulletin*" and that Purdue had failed to comply with its obligations in these documents by failing to provide Gordon with a "full or adequate Advisory Committee" and by failing to "ensure that his Major Professor/Advisor and /or Advisory Committee were competent and/or actually fulfilling their purpose in directing and supervising [Gordon's] doctoral research efforts to ensure his progress toward and ability to obtain a Ph.D." Appellant's Appendix at 601. Gordon also alleged that Purdue had "in bad faith, deprived [him] of due process, as he was not provided with an adequate or meaningful opportunity for hearing before the termination occurred" and that Purdue failed in its contractual obligations by allowing Dr. Aliprantis to issue a "U" grade for an impermissible or inappropriate reason. *Id.* at 602.

Purdue then filed a motion to dismiss or strike Gordon's First Amended Complaint based upon Ind. Trial Rule 41(E), 12(F), and 12(B)(6), which the trial court granted as follows on December 7, 2005:

\* \* \* \* \* \*

[Gordon] has now filed an amended complaint. However, the complaint fails to point to an identifiable contractual promise that the defendant failed to honor. The amended complaint alleges that two provisions of the contract between [Gordon] and the defendant were breached. The first is contained in the Purdue University Bulletin, Volume 100, May 2000, which provides,

"each prospective candidate for the Ph.D. degree, with the approval of his or her graduate program, shall select a major professor who will act as the chair of the advisory committee and who will direct the research. An advisory committee of not fewer than three members of the graduate faculty will then be appointed. The composition of this committee must be mutu-

ally acceptable to the student and the committee and should be representative of the general field of study in which the student expects to do work."

[Gordon] alleges that the defendant failed to ensure either that [Gordon] had an advisory committee or that the advisory committee was adequately performing its responsibilities. Secondly, [Gordon] also alleges that defendant breached its contract to him in that his major professor failed to obtain the necessary signatures or turn in the necessary paperwork to change the composition of his committee as required by the university's Policies and Procedures Manual For Administering Graduate Student Programs, Section VII, Part A.3. [Gordon] points to no other promise which defendant failed to honor. [Gordon] fails to allege that defendant had an obligation to educate him and in bad faith refused to do so. Rather, the complaint alleges that [Gordon] was adequately educated but that defendant refused to acknowledge his accomplishments. This claim falls within the subject matter as to which the Court previously granted summary judgment. The Court previously concluded that there is no genuine issue of material fact concerning whether [Gordon] received the due process to which he was entitled and whether defendant had properly dismissed him from its graduate program. The only remaining claim was whether the university had in bad faith refused to educate [Gordon]. There is no such allegation in the amended complaint.

Accordingly, the First Amended Complaint is dismissed.

Appellant's Appendix at 17–19.

Gordon then sought leave to file a Second Amended Complaint, which the trial court denied as follows on March 3, 2006:

The Court now (1) sustains [Purdue's] objection to [Gordon's] Motion for Leave to File Second Amended Complaint for Damages;

(2) Denies [Gordon's] Motion for Leave to File Second Amended Complaint; and

(3) Strikes [Gordon's] Tender of Second Amended Complaint for Damages and strikes the Second Amended Complaint filed without permission of the Court.

There being no just reason for delay, the Court now enters judgment in favor of [Purdue] and against [Gordon]. [Gordon] shall take nothing by his complaint.

Appellant's Appendix at 20.

Gordon then initiated this appeal and sought to appeal the trial court's orders of July 8, 2005 (granting summary judgment on breach of contract but not bad faith), September 1, 2005 (dismissing complaint and granting leave to file an amended complaint), December 7, 2005 (dismissing the First Amended Complaint), and March 3, 2006 (striking the Second Amended Complaint). Purdue filed a motion to dismiss with this court, which the motions panel granted in part and denied in part. Specifically, this court allowed Gordon to appeal from the December 7, 2005, and March 3, 2006, orders but not the July 8, 2005, and September 1, 2005, orders.

■■■ In his appellant's brief, Gordon asks that "the issue of his ability to appeal the trial court's Order of July 8, 2005 and the merits of that Order be preserved as necessary, including without limitation for any future appeal to the Indiana Supreme Court." Appellant's Brief at 3 n. 2. "Our court may reconsider a ruling by the motions panel." *State v. Sagalovsky*, 836 N.E.2d 260, 264 (Ind.Ct.App.2005) (quoting *Oxford Fin. Group, Ltd. v. Evans*, 795

N.E.2d 1135, 1141 (Ind.Ct.App.2003)), *trans. denied.* However, "we decline to do so in the absence of clear authority establishing that it erred as a matter of law." *Id.* Gordon makes no specific argument in his appellant's brief that the motions panel erred and does not specifically request that we reconsider the motions panel's decision. We will not address the issue sua sponte. Further, although Gordon makes an argument in his reply brief concerning the propriety of the motions panel's decision, an argument raised for the first time in a reply brief is waived. *See, e.g., Felsher v. Univ. of Evansville,* 755 N.E.2d 589, 593 n. 6 (Ind.2001). Consequently, pursuant to the motions panel's decision, we will consider only the trial court's December 2005 and March 2006 orders.

## I.

The first issue is whether the trial court abused its discretion by dismissing Gordon's first amended complaint. After the trial court granted summary judgment to Purdue on the breach of contract claim but not on a bad faith claim, it reconsidered its prior order and dismissed the complaint but granted Gordon ten days to file an amended complaint based upon bad faith. Gordon then filed a first amended complaint. Purdue filed a motion to dismiss or strike Gordon's first amended complaint pursuant to Ind. Trial Rule 41(E),[1] 12(F),[2] and 12(B)(6).[3]

Gordon argues that the trial court granted the motion to dismiss pursuant to Ind. Trial Rule 12(B)(6), while Purdue argues that the trial court granted the motion pursuant to Ind. Trial Rule 41(E). Even if we accept Gordon's argument that the first amended complaint was dismissed under Ind. Trial Rule 12(B)(6), Gordon's arguments fail.

 The standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim under Ind. Trial Rule 12(B)(6) is de novo. *Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct. App.2001). We do not defer to the trial court's decision because deciding a motion to dismiss based upon failure to state a claim involves a pure question of law. *Id.* "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint:

1. Ind. Trial Rule 41(E) provides:

 Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

 This Court has held that "Trial Rule 41 applies equally to orders of the court issued pursuant to the trial rules" and that a court may dismiss a lawsuit under Trial Rule 41 "for disobedience by the plaintiff of an order concerning the proceedings." *Office Environments, Inc. v. Lake States Ins. Co.,* 833 N.E.2d 489, 493 (Ind.Ct.App.2005).

2. Ind. Trial Rule 12(F) provides:

 Upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by these rules, upon motion made by a party within twenty [20] days after the service of the pleading upon him or at any time upon the court's own initiative, the court may order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent, or scandalous matter.

3. Ind. Trial Rule 12(B)(6) provides that a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted...."

that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Northwest Indiana*, 845 N.E.2d 130, 134 (Ind.2006). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." *Id.* "A court should 'accept[ ] as true the facts alleged in the complaint,' and should not only 'consider the pleadings in the light most favorable to the plaintiff,' but also 'draw every reasonable inference in favor of [the non-moving] party.' " *Id.* (internal citations omitted).

We begin by noting the legal relationship between a student and a university. In *Neel v. Ind. Univ. Bd. of Trustees*, 435 N.E.2d 607 (Ind.Ct.App.1982), this court held:

> Courts have analyzed the nature of the student-university relationship under many different legal doctrines. The most pervasive and enduring theory is that the relationship between a student and an educational institution is contractual in nature. The terms of the contract, however, are rarely delineated, nor do the courts apply contract law rigidly. As stated in *Olsson v. Board of Higher Education* (N.Y.1980) 49 N.Y.2d 408, 413, 426 N.Y.S.2d 248, 251, 402 N.E.2d 1150, 1152:
>
> > "(H)ornbook rules cannot be applied mechanically where the 'principal' is an educational institution and the result would be to override a determination concerning a student's academic qualifications. Because such determinations rest in most cases upon the subjective professional judgment of trained educators, the courts have

quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community." (citations omitted).

> The patchwork of holdings in this area is best characterized as recognizing an implied contract between the student and the university. Contract Law Note, 48 Ind.L.J. at 253. The nature of the terms vary:
>
> > "In the area of academic services, the courts' approach has been similar to that used with contracts conditioned upon the satisfaction of one party. The university requires that the student's academic performance be satisfactory to the university in its honest judgment. Absent a showing of bad faith on the part of the university or a professor, the court will not interfere. The good faith judgment model both maximizes academic freedom and provides an acceptable approximation of the educational expectations of the parties." *Id.* at 263 (footnotes omitted).
>
> Indiana has recognized the existence of implied terms in the contract between student and university. *See State ex rel. Stallard v. White* (1882) 82 Ind. 278, 286.

*Neel*, 435 N.E.2d at 610–611 (internal citations omitted).

Although we did not define "bad faith" in *Neel*, in other contexts we have defined "bad faith" as:

> [T]he absence of good faith is bad faith, but bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Turner v. Board of Aviation Comm'rs*, 743 N.E.2d 1153, 1171 (Ind.Ct.App.2001),

*trans. denied; Stoehr v. Yost,* 765 N.E.2d 684, 687–688 (Ind.Ct.App.2002), *trans. denied; see also Gupta v. New Britain General Hosp.,* 239 Conn. 574, 687 A.2d 111 (1996) (discussing the student's claims that the hospital's dismissal of him was "arbitrary, capricious, or [in] bad faith" and violated the "implied covenant of good faith and fair dealing" and noting that "[b]ad faith means more than mere negligence; it involves a dishonest purpose").

█ Here, the first amended complaint alleged a claim of bad faith breach of contract against Purdue. Gordon alleged that his contractual relationship with Purdue was "effectively set out in Purdue's *Policies and Procedures Manual for Administering Graduate Student Programs* and/or the *Purdue University Bulletin* " and that Purdue had failed to comply with its obligations in these documents by failing to provide Gordon with a "full or adequate Advisory Committee" and by failing to "ensure that his Major Professor/Advisor and /or Advisory Committee were competent and/or actually fulfilling their purpose in directing and supervising [Gordon's] doctoral research efforts to ensure his progress toward and ability to obtain a Ph.D." Appellant's Appendix at 601. Gordon also alleged that Purdue had "in bad faith, deprived [him] of due process, as he was not provided with an adequate or meaningful opportunity for hearing before the termination occurred" and that Purdue failed in its contractual obligations by allowing Dr. Aliprantis to issue a "U" grade for an impermissible or inappropriate reason. *Id.* at 602.

The trial court found that the first amended complaint failed "to point to an identifiable contractual promise that the defendant failed to honor." Appellant's Appendix at 17. According to the trial court, the allegations in the first amended complaint were resolved in its previous summary judgment order. The trial court found that Gordon had failed to allege bad faith in the first amended complaint. We must agree with the trial court.

Gordon's first amended complaint was in essence a restatement of his original complaint, upon which the trial court had granted summary judgment. Despite the trial court's order to limit the first amended complaint to an action for bad faith, Gordon simply reasserted his original claims under a label of bad faith. The facts as alleged in the first amended complaint do not show "the conscious doing of a wrong because of dishonest purpose or moral obliquity" or "a state of mind affirmatively operating with furtive design or ill will." *Turner,* 743 N.E.2d at 1171. Rather, the facts allege negligence or breach of contract, claims upon which the trial court had granted summary judgment. Even accepting the facts as alleged by Gordon as true, the facts do not state a claim for bad faith pursuant to *Neel.* We conclude that the trial court did not err by dismissing Gordon's first amended complaint. *See, e.g., Trail,* 845 N.E.2d at 141 (affirming the trial court's dismissal of the plaintiff's complaint for failure to state a claim).

## II.

The next issue is whether the trial court abused its discretion by denying Gordon's request to file a second amended complaint. According to Gordon, his first amended complaint was dismissed pursuant to Ind. Trial Rule 12(B)(6). Ind. Trial Rule 12(B) provides:

> When a motion to dismiss is sustained for failure to state a claim under subdivision (B)(6) of this rule the pleading may be amended once as of right pursuant to Rule 15(A) within ten [10] days after service of notice of the court's order sustaining the motion and thereafter

with permission of the court pursuant to such rule.

Ind. Trial Rule 15(A) provides:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty [30] days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires.

 Gordon first argues that he could amend his complaint "as of right" pursuant to Ind. Trial Rule 12(B). However, as noted above, Rule 12(B) provides that a complaint "may be amended *once* as of right once pursuant to Rule 15(A) within ten [10] days after service of notice of the court's order sustaining the motion and thereafter with permission of the court pursuant to such rule." (emphasis added). The trial court's September 2005 order dismissed Gordon's complaint and allowed Gordon ten days to file an amended complaint. Gordon's first amended complaint was then dismissed, and he sought to file a second amended complaint. Gordon's complaint had already been amended once as of right and further amendments by way of filing a second amended complaint required permission of the trial court pursuant to Ind. Trial Rule 15(A).

 Gordon also argues that the trial court should have granted his motion to file a second amended complaint pursuant to Ind. Trial Rule 15(A). Under Rule 15(A), Gordon needed leave of court to file his second amended complaint and, pursuant to the rule, such leave "shall be given when justice so requires." "Amendments should be liberally allowed under Trial Rule 15(A), while giving proper regard for

any prejudice to the nonmoving party." *United of Omaha v. Hieber,* 653 N.E.2d 83, 87 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* "The trial court has broad discretion in deciding whether to permit amendments to pleadings, and we will reverse only upon a showing of abuse of that discretion." *Id.* "Among the factors which a trial court may consider are undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of amendment." *Id.*

 Here, Purdue had already filed a motion for judgment on the pleadings, a motion for summary judgment, a motion to clarify/reconsider, and a motion to dismiss Gordon's first amended complaint. Despite an opportunity to amend his complaint to include a claim of bad faith, Gordon's first amended complaint failed to make the proper allegations. Moreover, despite Gordon's attempts to revise the first amended complaint's allegations, the proposed second amended complaint also did not contain allegations of "the conscious doing of a wrong because of dishonest purpose or moral obliquity" or "a state of mind affirmatively operating with furtive design or ill will." *Turner,* 743 N.E.2d at 1171. Rather, the second amended complaint again raised issues that had been previously resolved in the summary judgment orders. Under these circumstances, we cannot say that the trial court abused its discretion by denying Gordon's request to file a second amended complaint. *See, e.g., Kelley v. Vigo County Sch. Corp.,* 806 N.E.2d 824, 831 (Ind.Ct. App.2004) (holding that the trial court did not abuse its discretion by denying the plaintiff's motion to file a third amended complaint where the amendment would have been futile), *reh'g denied, trans. denied.*

For the foregoing reasons, we affirm the trial court's dismissal of Gordon's first amended complaint and denial of Gordon's request to file a second amended complaint.

Affirmed.

BAILEY, J. and MATHIAS, J. concur.