In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 11-1933 & 11-2109

SUNG PARK,

*Plaintiff-Appellant,*

*v.*

INDIANA UNIVERSITY SCHOOL OF DENTISTRY, et al.,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-01408-WTL-WGH—**William T. Lawrence**, *Judge.*

ARGUED MARCH 26, 2012—DECIDED AUGUST 30, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Sung Yeun Park had hoped to become a dental surgeon when she enrolled at the Indiana University School of Dentistry (IUSD) in 2006. After one year at the school, however, Park began to experience a series of serious setbacks, including several failing grades and allegations of professional misconduct.

Eventually, the school concluded that she had to be dismissed from its program. Park appealed without success to various school committees and administrators to overturn this decision. This suit, alleging Equal Protection and Due Process violations, as well as claims for state law breach of contract, represents her latest effort to win re-admittance. The district court dismissed all of Park's claims for failure to state a claim, and we affirm.

**I**

Park enrolled in IUSD's doctoral dental surgery program in 2006 and completed her first year of dental school without incident, but on the margin. At that point, her class rank was 95th out of 103. In her second year, she encountered even more severe academic setbacks. In one instance, because of her weak performance in a class, Park was required to take a remediation exam. She contacted the professor for that class (Dr. Haug) a few days before the deadline for completing the re-take, but she was unable to complete the exam in time, and so she received a failing grade. She also was charged with acting unprofessionally by failing to schedule the exam in a timely manner. In another class, Park allegedly "arriv[ed] late for and subsequently le[ft] early [from] . . . a remediation examination (without permission from the faculty)." Over the course of this year, Park was placed on academic probation twice; she eventually was required to repeat her entire second year of classes after spending one year away from the school.

As directed, Park recommenced her course of study in 2009. Although Park's academic performance improved somewhat, IUSD still was not satisfied with Park's professional development. She was reprimanded for breaching confidentiality rules, a violation of the IUSD Code of Conduct. Other charges, such as her failure to report a class absence, were determined not to be violations of IUSD's policies. Nevertheless, Park eventually was brought before IUSD's Faculty Professional Conduct Committee, which recommended dismissing Park for her "admitted inability to prioritize and accomplish competing tasks" and her "noncompliance [with] professional responsibilities." She appealed this decision to the Faculty Council Appeals Committee and to the university-wide Graduate Office, but neither appeal was successful.

Unable to procure relief from the university, Park turned to the federal courts. She filed a complaint in the U.S. District Court for the Southern District of Indiana in November 2010, alleging a variety of federal and state law claims. The district court dismissed Park's complaint, and she now appeals.

## II

Before examining the merits of Park's lawsuit, we take a moment to address a jurisdictional question that arose during oral argument. Park's lawsuit seeks damages from the Indiana University School of Dentistry, which is an arm of the State of Indiana. Thus, one might wonder why Indiana's sovereign immunity does not

bar this suit. The answer is simple: sovereign immunity is a waivable affirmative defense, *Board of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 463 (7th Cir. 2011), and in this case, Indiana has waived it. It never once raised the issue of immunity before the district court, and even when prompted by this court at argument, counsel for IUSD declined to argue that sovereign immunity defeats Park's case. IUSD has thus waived its sovereign immunity defense, and so we do not explore that question any further. See *Wood v. Milyard*, 132 S. Ct. 1826, 1835 (2012).

We review the district court's order granting IUSD's motion to dismiss *de novo*, "constru[ing] the complaint in the light most favorable to the plaintiff" and drawing all possible inferences in Park's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In any event, aside from several supplemental affidavits presented by the defendants that go beyond the scope of our review at this stage of the litigation, the facts are not seriously contested by the parties. Rather, the main issue presented in this appeal is whether any legal consequences flow from the facts that Park has alleged.

A

Because Park's claim under Indiana contract law is closely connected to her federal due process claims, we begin with the contract theory. Park alleges that IUSD breached its contract with her by failing to follow the disciplinary procedures set out in IUSD's Student Handbook and Codes of Conduct. For the purposes of this

appeal, we assume that Park has pleaded the existence of an implied contract arising out of these documents between herself and IUSD. *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 601 (7th Cir. 2009) ("[A] student may establish that an implied contract existed between h[er]self and the university that entitled the student to a specific right . . . ."); *Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) (" '[T]he relationship between a student and an educational institution is contractual in nature . . . .' " (quoting *Neel v. Indiana Univ. Bd. of Trustees*, 435 N.E.2d 607, 610-11 (Ind. Ct. App. 1982))); *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) ("The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract.")

This assumption allows us to focus on the question of breach. Park alleges that IUSD violated the terms of the "contract" by failing to follow the dismissal procedures outlined in its handbooks to the letter. IUSD may not have done so, but that does not automatically lead to a finding of breach. Indiana courts have taken a flexible approach to the scope of contractual promises between students and universities: "[H]ornbook rules cannot be applied mechanically where the principal is an educational institution and the result would be to override [an academic] determination." *Gordon*, 862 N.E.2d at 1248 (Ind. Ct. App. 2007). Thus, Indiana "courts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community," *id.*, noting that "literal adherence to internal rules will not be required where the

dismissal rests upon expert judgments as to academic or professional standards." *Neel*, 435 N.E.2d at 612.

This case falls squarely within the group described in *Neel*. The decision to dismiss Park was based on the faculty's determination that Park "fail[ed] to progress in [her] professional development and fail[ed] to demonstrate fitness to practice" at the level of proficiency required. Park's complaint concedes as much: she failed the remediation exam in Dr. Haug's class; she engaged in an "unprofessional exchange" with another professor; and she breached the school's confidentiality policy, which is certainly relevant to the professional standards that would be expected of a dentist. Compl. ¶¶ 38, 41, 51, 52. In all, Park's record at IUSD was marred by a host of problems, and, as a result, the faculty decided to dismiss her. Absent some indication that this decision was arbitrary or made in bad faith—and the complaint points to none that we can detect—we decline to second-guess the judgment of the faculty. *Neel*, 435 N.E.2d at 613. Park has no state law claim for breach of contract.

B

Next, Park asserts that IUSD violated her rights to procedural and substantive due process when it expelled her from the university. We consider first her procedural due process claim, which requires her to prove that the university deprived her of a cognizable property interest and that it failed to provide whatever process of law was due for such a deprivation. *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003).

In other cases we have noted that where a plaintiff asserts a due process violation in connection with a state-created interest, such as a state-law contract right, the possibility of state-court adjudication is sometimes sufficient to meet the federal standard. *Mid-American Waste Sys., Inc. v. City of Gary*, 49 F.3d 286, 291 (7th Cir. 1995); see also *Galdikas v. Fagan*, 342 F.3d 684, 691 (7th Cir. 2003) (state-court process adequate to vindicate substantive due process interest), abrogated on other grounds, *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). In this case, however, we need not even reach that issue, because Park has not identified a protectable property interest.

As a general matter, a contract with a state agency may give rise to a protected property interest. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-78 (1972). A close examination of Park's complaint, however, reveals that she is not asserting an interest in continuing her graduate education. Compare *Hlavacek v. Boyle*, 665 F.3d 823, 825 (7th Cir. 2011). Instead, she asserts an interest in her allegedly contractually-guaranteed rights to university process prior to being dismissed. Compl. ¶¶ 63, 66. That is, Park is complaining only about the deprivation of her "right" to receive notice of the charges against her, her "right" to prior notice of adverse witness statements, and her "right" to cross-examine those witnesses at university hearings. The Supreme Court has emphasized that the federal Constitution's due process clause does not protect an interest in other process. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. The State may choose to require

procedures . . . but in making that choice the State does not create an independent substantive right."); see also *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 769-73 (Souter, J., concurring) (no federal due process protection for "state-law benefit . . . [that] is itself a variety of procedural regulation"). Park's interest in contractually-guaranteed university process is not protected by the federal Constitution. Doing so would supply "federal process as a substitute simply for state process." *Castle Rock*, 545 U.S. at 772 (Souter, J., concurring).

Park also asserts that IUSD violated her rights to substantive due process. We can quickly dispose of this argument. As the Supreme Court pointed out in *Washington v. Glucksberg,* 521 U.S. 702 (1997), "the [Due Process] Clause . . . provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.* at 720. The list of such rights and interests is, however, a short one, including things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity. *Id.* Conspicuously missing on this list is the right to follow any particular career. Indeed, no court could recognize such a right without acting in the teeth of the many cautions that the Supreme Court has given against expanding the concept of substantive due process, "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.* Because Park's interest in becoming a dentist is not one that the due process clause protects, the district court correctly found that this part of her suit had to be dismissed.

## C

Finally, Park attempts to raise a claim under the Equal Protection Clause, based on the fact that she is a woman of Korean descent and she supposedly belongs to a "class of one." Neither of these allegations withstands scrutiny.

Park concedes that her complaint did not specifically plead that her race or her gender had anything to do with what happened to her. This alone could defeat her claim of race- and gender-based discrimination. But even looking past this omission, Park's complaint does not plausibly allege discriminatory intent. The complaint contains only one reference to any such discrimination: a single statement that "Defendants' conduct [expelling Park] was undertaken because of her race, ancestry, national origin and/or gender." Compl. ¶ 77. This unsupported legal conclusion is precisely the type of allegation that was rejected in *Iqbal*, 556 U.S. 662, 678 (2009), and in *Twombly*, 550 U.S. 544, 556-57 (2007). On appeal, Park attempts to remedy this deficiency by including a footnote in her brief noting that she is "prepared to testify to specific instances in which Defendants applied a pattern of prejudicial and discriminatory standards of conduct to other female [and Asian] dental students." But an appellate brief is not the place for an amendment to the complaint, and even this footnote offers no facts that might plausibly support these allegations.

To succeed on her "class of one" claim, Park must show that IUSD intentionally discriminated against her

and that there is no rational basis for IUSD's actions, *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 913 (7th Cir. 2012) (*en banc*) (Wood, J., dissenting), or that IUSD should have known that its discriminatory actions lacked justification, *id.* at 889 (Posner, J., lead opinion). Park suggests that she has shown intentional discrimination because other IUSD students who were party to a cheating scandal at the school received a less harsh punishment, despite their more serious violation. See Supp. App'x to Reply Br. at A209 (citing *Indiana University School of Dentistry*, WIKIPEDIA, http://en.wikipedia.org/wiki/Indiana_University_School_of_Dentistry). Even if we put aside the fact that none of these allegations is contained in her complaint, we cannot overlook the fact that there is no reason to suppose that these students are comparable to Park. We do not know, for example, whether these students, like Park, failed several classes, failed to schedule required remediation exams, engaged in unprofessional exchanges with their professors, and breached the university's confidentiality policy. These additional facts defeat any plausible inference that Park's expulsion could be traced to intentional discrimination. Instead, they show that IUSD's decision to dismiss her, rather than some of her peers, was not irrational. "It is entirely rational . . . to permit state actors to make individualized decisions when the very nature of their job is to take a wide variety of considerations into account." *Del Marcelle*, 680 F.3d at 913 (Wood, J., dissenting). After accounting for all of Park's conduct, we see nothing in the complaint that would cause us to question IUSD's decision to dismiss Park from the school.

IUSD did not breach its contract with Park, nor did IUSD violate Park's federal rights to due process or equal protection of the laws. The judgment of the district court is AFFIRMED.