**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 01 2012, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN B. STEINHART**
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**WAYNE E. UHL**
Stephenson Morow & Semler
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ROBERT L. PEALS,                               )
                                               )
    Appellant-Plaintiff,              )
                                               )
       vs.                 )  No.  84A01-1110-PL-451
                                               )
INDIANA STATE UNIVERSITY and its               )
BOARD OF TRUSTEES,                             )
                                               )
    Appellee-Defendant.               )

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Phillip I. Adler, Judge
Cause No. 84D02-0611-PL-9675

**October 1, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Robert Peals ("Peals") appeals the trial court's judgment in favor of Indiana State University and its Board of Trustees ("the School") on Peals's breach of implied contract claim. He presents one issue for our review: whether the trial court's judgment for the School was clearly erroneous. We affirm.

**Facts and Procedural History**

Shortly after earning his Bachelor of Science degree in Criminology from the School in the summer of 1996, Peals applied for admission to the School's Master of Science program in Criminology ("the Program"). The School conditionally admitted Peals because his undergraduate grade point average ("GPA") fell below the required level for regular admission to the Program ("1996 admission"). To maintain his enrollment, Peals's admission required him to earn a grade of at least "B" in each of his first four graduate classes and to maintain a GPA of a "B," a 3.0 ("the grade requirement"). Except for a brief period during which he was on sabbatical, Dr. Jeffrey Schrink ("Dr. Schrink") was the chairperson of the School's criminology department during the events at issue and was Peals's academic advisor.

Peals registered late for the fall semester of 1996 and attended classes. He failed to satisfy his grade requirement when he earned a 2.87 GPA for the fall semester of 1996, and the School placed him on probationary status. The School therefore notified Peals that if he failed to raise his GPA to at least 3.00 by the time he completed twelve additional hours of coursework, he no longer would be enrolled in the Program.

2

In the spring of 1997 Peals enrolled in and attended a class, "CRIM 604," taught by Dr. Edmund Grosskopf ("Dr. Grosskopf"). By mid-semester, Peals had a grade of "F" in CRIM 604, which would drop him below the grade requirement by the end of the semester. Peals failed to satisfy both the grade requirement and the requirement of his probationary status when he earned a 2.75 GPA for the spring semester of 1997.

Instead of removing Peals from the Program, the School again notified Peals that he was on probationary status, and that if he failed to raise his GPA to at least 3.00 by the time he completed twelve additional hours of coursework, he no longer would be in the Program. Peals attempted to enroll in nine credit hours for the summer of 1997, but because of a past due financial account balance he did not receive credit for those classes. Peals neither registered for, nor attended classes at the School from the fall of 1997 through the spring of 1999.

Under the terms of Peals's 1996 admission to the School, "[a]ny student admitted to the School of Graduate Studies and to a department who has not enrolled and received graduate credit for work at Indiana State University for a period of two consecutive years will have cancelled his or her admission[]" ("the two-year limit"). (Ex. 3.) By the fall of 1999, when Peals next attempted to register for classes, he had exceeded the two-year limit, and he could not register because of a hold on his account caused by a past due financial account balance. Because of the hold on Peals's account, the Registrar did not know that he needed to apply for readmission to the Program, so they could not advise him of that fact.

On April 14, 2000, Peals applied for readmission to the Program. In July of 2000, the

3

School conditionally readmitted Peals over the objection of the criminology department faculty. A condition of Peals's readmission was to complete all degree requirements by December 14, 2001, with no deadline extensions permitted. When Peals failed to complete his degree requirements by the deadline, the School removed him from the Program.

On November 13, 2006, Peals filed a complaint against the School in the Vigo Superior Court alleging breach of contract. Following a bench trial, the trial court entered a general verdict for the School on Peals's contract claim on September 8, 2011. Peals filed this appeal on October 7, 2011.

**Discussion and Decision**

On appeal from a bench trial, we uphold the trial court's judgment unless the judgment is clearly erroneous. Garling v. Ind. Dep't of Natural Res., 766 N.E.2d 409, 410 (Ind. Ct. App. 2002), trans. denied. Clear error occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, and we are left with a firm conviction that a mistake has been made. Hinesley–Petry v. Petry, 894 N.E.2d 277, 280 (Ind. Ct. App. 2008), trans. denied. In the absence of special findings, we review a trial court's decision as a general judgment. Perdue Farms, Inc. v. Pryor, 683 N.E.2d 239, 240 (Ind. 1997). We will affirm the trial court's judgment if it can be sustained on any legal theory consistent with the evidence. Holtzleiter v. Holtzleiter, 944 N.E.2d 502, 505 (Ind. Ct. App. 2011). We neither reweigh the evidence nor judge the credibility of witnesses, and we consider only the evidence most favorable to the judgment and all reasonable inferences drawn therefrom. Id.

4

The parties have stipulated that an implied contract existed between Peals and the School by virtue of his admission as a student, and Indiana law recognizes an implied contractual relationship between student and university. Gordon v. Purdue Univ., 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007); Neel v. Ind. Univ. Bd. of Trs., 435 N.E.2d 607, 611 (Ind. Ct. App. 1982). However, the terms of the contract are rarely delineated. Neel, 435 N.E.2d at 610. Furthermore, we do not apply contract law rigidly in this context, and we exercise restraint in applying traditional legal rules to disputes within the academic community. Id. at 610-11. As we have previously noted:

> In the area of academic services, the courts' approach has been similar to that used with contracts conditioned upon the satisfaction of one party. The university requires that the student's academic performance be satisfactory to the university in its honest judgment. Absent a showing of bad faith on the part of the university or a professor, the court will not interfere. The good faith judgment model both maximizes academic freedom and provides an acceptable approximation of the educational expectations of the parties.

Gordon, 862 N.E.2d at 1251. In this context, "bad faith is not simply bad judgment or negligence[, r]ather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. . . ." Id. at 1252.

On appeal, Peals alleges that the School had a dishonest purpose and thus acted in bad faith, breaching the implied contract between them. More specifically, Peals alleges that: (1) the School failed to allow Peals to drop a class; (2) Dr. Schrink intentionally failed to properly advise and assist Peals; (3) Dr. Schrink intentionally provided Peals and School officials with false information; and (4) the School prevented Peals from registering for certain classes, and then charged him tuition for those classes. The trial court entered a

5

general judgment as opposed to findings of fact and conclusions thereon. However, in so ruling, the trial court necessarily found an absence of bad faith as to each of Peals's allegations.

The evidence most favorable to the judgment discloses that, while the School gave Peals multiple opportunities to graduate from the Program, Peals was either unable or unwilling to meet his obligations. Peals failed to take the steps necessary to timely withdraw from CRIM 604. Peals received advice and assistance from Dr. Schrink, both in his capacity as chairperson of the Criminology department, and as a graduate student advisor, but Peals often failed to implement his advice. For example, on several occasions, he failed to timely return signed forms or to timely register, and he failed to keep his financial account free of encumbrances or holds. To the extent that Dr. Schrink provided information to Peals, false or otherwise, this information caused no harm to him.[1] Peals alone bears responsibility for his failure to earn credit for the summer 1997 classes, and the School justifiably charged Peals for those classes which he attended, and in which he eventually enrolled late. Many of Peals's arguments essentially are invitations for us to reweigh the evidence, which we decline to do. Holtzleiter, 944 N.E.2d at 505.

## Conclusion

The evidence most favorable to the judgment supports the trial court's conclusion that the School did not breach its implied contract with Peals by acting in bad faith, and therefore

---

[1] In one conversation with a School official, Dr. Schrink reported that Peals had not taken classes in 1999. (Tr. 132.) However, this mistake did not adversely affect Peals, who had been out of class for at least two years and required readmission regardless of whether he had attended class in 1999.

6

the trial court's judgment for the School is not clearly erroneous.

Affirmed.

RILEY, J., and CRONE, J., concur.