PER CURIAM.
Five judges have voted to affirm the district court’s judgment and five to remand for further proceedings. The result of this tie vote is affirmance, because it takes a majority to reverse a judgment.
Although it is customary not to issue opinions when an appellate court affirms on a tie vote, there are occasional departures. See, e.g., School District of the City of Pontiac v. Secretary of Education, 584 F.3d 253 (6th Cir.2009) (en banc); United States v. McFarland, 311 F.3d 376, 417-20 and n. 1 (5th Cir.2002) (en banc) (dissenting opinion, collecting cases); United States v. Walton, 207 F.3d 694 (4th Cir.2000) (en banc); United States v. Klubock, 832 F.2d 664 (1st Cir.1987) (en banc); see also Standard Industries, Inc. v. Tigrett Industries, Inc., 397 U.S. 586, 90 S.Ct. 1310, 25 L.Ed.2d 590 (1970) (dissenting opinion); Biggers v. Tennessee, 390 U.S. 404, 404 n. 1, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968) (dissenting opinion, collecting cases). A majority of the judges of the court have concluded that this is an appropriate occasion for such a departure. The law concerning “class of one” equal-protection claims is in flux, and other courts faced with these cases may find the discussion in the three opinions in this case helpful.
Judge POSNER’S lead opinion is joined by Judges KANNE, SYKES, and TINDER. Chief Judge EASTERBROOK has written an opinion concurring in the judgment. Judge WOOD’S dissenting opinion is joined by Judges FLAUM, ROVNER, WILLIAMS, and HAMILTON.
The judgment is affirmed by an equally divided court.
POSNER, Circuit Judge,
with whom KANNE, SYKES, and TINDER, Circuit Judges, join.
The plaintiff brought this federal civil rights suit against law enforcement officers in a Wisconsin county (and against the county itself), charging that they had denied him equal protection of the laws. They had done this, the complaint alleges, by failing to respond to his complaints about gangs that were harassing him and his wife and had eventually forced them to sell their house in the Village of Denmark and move to another village in the county, with the gangs in hot pursuit. The district court, interpreting the pro se complaint as simply a complaint about inadequate police protection, dismissed the suit for failure to state a claim, correctly ruling that states are not required by the Fourteenth Amendment to provide adequate police protection against private violence. De-Shaney v. Winnebago County Dep’t of Social Services, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); Hilton v. City of Wheeling, 209 F.3d 1005, 1007 (7th Cir.2000); Schroder v. City of Fort Thomas, 412 F.3d 724, 725-26 (6th Cir.2005).
The plaintiff appealed, and the appeal was submitted to a three-judge panel in March 2011. The panel noted that the complaint could be interpreted as charging the defendants with arbitrarily providing less police protection to the plaintiff and his wife than the police provide to other residents of Brown County. See Geinosky v. City of Chicago, 675 F.3d 743 (7th Cir.2012). The plaintiffs invocation of the equal protection clause of the Fourteenth Amendment supported that characteriza *889 tion, and so interpreted the suit presented a “class of one” discrimination claim, as distinct from a claim of discrimination based on a plaintiffs membership in a particular group, such as a racial or religious minority. However, although detailed, the complaint did not allege that the defendants’ failure to protect the plaintiff from harassment by gangs had been the result of their harboring some personal animosity toward the plaintiff or his wife, and the panel concluded that without such an allegation the plaintiffs equal protection claim failed.
In advance of publication, the panel circulated its proposed opinion affirming the dismissal of the suit to the full court under Circuit Rule 40(e), because the opinion proposed a new approach to the standard of liability in class-of-one discrimination cases. The full court decided on April 12 of last year to hear the case en banc, and so the panel opinion was not published and instead the appeal was reargued before the full court. The plaintiff had litigated pro se, but upon deciding to hear the case en banc the court requested Thomas L. Shriner, Jr., of the law firm of Foley & Lardner LLP, to represent the plaintiff. We thank Mr. Shriner, his colleague Relien C. Kasper, and the firm for their excellent representation of the plaintiff.
In deciding to hear the case en banc, the court had hoped that the judges might be able to agree on an improved standard for this difficult class of cases. We have not been able to agree. The court has split three ways, but by a tie vote has affirmed the dismissal of the suit.
This opinion, expressing the views of four judges, proposes a simple standard: that the plaintiff be required to show that he was the victim of discrimination intentionally visited on him by state actors who knew or should have known that they had no justification, based on their public duties, for singling him out for unfavorable treatment — who acted in other words for personal reasons, with discriminatory intent and effect. The plaintiff’s complaint, although detailed, does not allege that the defendants failed to protect him from harassment because they wanted to single him out for unfavorable treatment and had no justification, such as limited resources, for their failure to protect him. For this reason, the suit is rightly being dismissed.
We believe that class-of-one suits should not be permitted against police officers or police departments, complaining about failure to investigate a complaint or otherwise provide police protection to a particular individual, unless the police, acting from personal motives, with no justification based on their public duties, intend to disfavor the plaintiff. Such suits, unless exceptional in the way just indicated, are neither necessary to prevent serious injustices nor manageable; they are not compelled by the equal protection clause or the case law interpreting it; they fill no yawning gap in the legal protection of Americans. This case and cases like it are remote from the original target of the equal protection clause — law enforcers who systematically withdraw protection from a group against which they are prejudiced. The unwillingness of the law enforcement authorities in southern states to protect the newly freed blacks from white vigilante groups such as the Ku Klux Klan was an important motive for the enactment of the equal protection clause. Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 70-71, 21 L.Ed. 394 (1872); Hilton v. City of Wheeling, supra, 209 F.3d at 1007; David P. Currie. The Constitution in the Supreme Court: The First Hundred Years 349 (1985).
The history of class-of-one litigation can be said to have begun with our decision in Olech v. Village of Willowbrook, 160 F.3d *890 386 (7th Cir.1998), though there were earlier cases in our court and in other courts as well. See id. at 387. The reason for making Olech the starting point of our narrative is what the Supreme Court did with it.
The Olechs wanted the Village to connect their home to the municipal water system. The Village agreed, but only on condition that the Olechs grant it not the customary 15-foot-wide easement to enable the Village to service the water main but a 33-foot-wide easement to enable the Village to widen the road on which the Olechs lived. They rejected the condition, and after several months of disputation the Village relented, admitted that it had had no good reason to demand the wider easement, and agreed to hook up the Olechs’ home to the water main in exchange for the standard 15-foot easement. The Olechs sued for the damages they’d sustained by being without water during the period in which the Village was demanding the larger easement. They claimed that the Village had had no justification for treating them differently from other property owners — it had done so to punish them for having successfully sued it for negligently installing culverts near their property.
The district court dismissed the Olechs’ suit for failure to state a claim. We reversed. Though “troubled ... by the prospect of turning every squabble over municipal services ... into a federal constitutional case,” we were comforted by the thought that “the ‘vindictive action’ class of equal protection cases requires proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant.” Id. at 388.
The Supreme Court affirmed our decision in a brief per curiam opinion, Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), but without making clear what role if any motive should play in such cases. It emphasized the allegations “that the Village’s demand was ‘irrational and wholly arbitrar/ and that the Village ultimately connected [the Olechs’] property [to the water system] after receiving a clearly adequate 15-foot easement,” and said that “these allegations, quite apart from the Village’s subjective motivations, are sufficient to state a claim for relief under traditional equal protection analysis. We therefore affirm the judgment of the Court of Appeals, but do not reach the alternative theory of ‘subjective ill will’ relied on by that court.” Id. at 565, 120 S.Ct. 1073.
One hears frequent laments that modern Supreme Court opinions are too long, but the opinion in Olech is too short. It leaves the key words “irrational” and “wholly arbitrary” undefined in the class-of-one context. “[Traditional equal protection analysis” is situation specific: industry groups complaining about discriminatory regulations do not receive the same consideration in equal protection case law as blacks or women complaining about racial or sexual discrimination. Women for that matter don’t receive as much consideration as blacks; and hippies, the elderly, and the mentally impaired don’t receive as much consideration as women or blacks. See Railway Express Agency, Inc. v. New York, 336 U.S. 106, 109-10, 69 S.Ct. 463, 93 L.Ed. 533 (1949); United States Dep’t of Agriculture v. Moreno, 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312-14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam); City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440-43, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); Grutter v. Bollinger, 539 U.S. 306, 326-27, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003). Class-of-one discrimination *891 might well be thought also to require a different level of consideration from other forms of discrimination challenged under the equal protection clause, as the Court was later to realize. Justice Breyer, concurring in the judgment but not in the majority opinion in Olech, said that the presence of subjective ill will was “sufficient to minimize any concern about transforming run-of-the-mill zoning cases into cases of constitutional right.” 528 U.S. at 566, 120 S.Ct. 1073. The majority ignored his concurrence.
We have difficulty understanding why— since the issue in Olech was simply whether class-of-one equal protection claims are permissible — the Court took the occasion to reject, or at least appear to reject, the limiting principle that we had suggested and Justice Breyer had endorsed. The Court need not have endorsed it — it need only have confined the immediate decision to cases in which ill will was shown; if later a case arose in which a compelling equal protection argument was made despite the absence of a bad motive, the Court could have allowed the case to proceed without contradicting anything in its opinion in Olech. Making the presence of ill will a factor in the conclusion that the Olechs had stated a claim would have launched modern class-of-one equal protection litigation on calmer waters.
Like Justice Breyer, lower-court judges did not believe that class-of-one litigation could be kept from exploding without some limiting principles, but they (we) couldn’t and still can’t agree on what those principles should be. Eight years ago a concurring opinion in Bell v. Duperrault, 367 F.3d 703, 709-13 (7th Cir.2004), noted the lack of clarity concerning the standard for deciding such cases, echoing scholarly commentary: Robert C. Farrell, “Classes, Persons, Equal Protection, and Village of Willowbrook v. Olech,” 78 Wash. L.Rev. 367, 400-25 (2003); J. Michael McGuinness, “The Impact of Village of Willowbrook v. Olech on Disparate Treatment Claims,” 17 Tomo L.Rev. 595, 603-06 (2001); Shaun M. Gehan, Comment, ‘With Malice Toward One: Malice and the Substantive Law in ‘Class of One’ Equal Protection Claims in the Wake of Village of Willowbrook v. Olech,” 54 Me. L.Rev. 329, 379-80 (2002). And since then scholarly complaint about the lack of clarity in class-of-one case law has mushroomed. See H. Jefferson Powell, “Reasoning About the Irrational: The Roberts Court and the Future of Constitutional Law,” 86 Wash. L.Rev. 217, 261-76 (2011); Benjamin L. Schuster, “Fighting Disparate Treatment: Using the ‘Class of One’ Equal Protection Doctrine in Eminent Domain Settlement Negotiations,” 45 Real Property, Trust & Estate L.J. 369, 391-94 (2010); Robert C. Farrell, “The Equal Protection Class of One Claim: Olech, Engquist, and the Supreme Court’s Misadventure,” 61 S.C. L. Rev. 107, 121-25 (2009); Kerstin Miller, Note, “Engquist v. Oregon Department of Agriculture: No Harm Meant? The Vanquished Requirement of Ill-Will in Class-Of-One Equal Protection Claims and the Erosion of Public Employees’ Constitutional Rights,” 68 Md. L. Rev 915, 935-36 (2009); Matthew M. Morrison, Comment, “Class Dismissed: Equal Protection, the ‘Class-of-One,’ and Employment Discrimination After Engquist v. Oregon Department of Agriculture,” 80 U. Colo. L.Rev. 839, 854-56 (2009); William D. Araiza, “Irrationality and Animus in Class-of-One Equal Protection Cases,” 34 Ecology L.Q. 493, 498-500 (2007); Robert J. Krotoszynski, Jr., “Taming the Tail that Wags the Dog: Ex Post and Ex Ante Constraints on Informal Adjudication,” 56 Admin. L.Rev. 1057, 1068 n. 50 (2004).
In Hilton v. City of Wheeling, supra, we took a stab at formulating a standard that we hoped would be both consistent with Olech and operable: “to make out a prima *892 facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant’s position.” 209 F.3d at 1008. Hostility to the plaintiff (“animus”), the motive emphasized in our Olech opinion and in Justice Breyer’s concurrence in the Supreme Court, was only one of the “reasons of a personal nature unrelated to the duties of the defendant’s position” that we thought should be actionable in class-of-one litigation. Others included larceny, as in Forseth v. Village of Sussex, 199 F.3d 363, 371 (7th Cir.2000), and a desire to find a scapegoat in order to avoid adverse publicity and the threat of a lawsuit, as in Ciechon v. City of Chicago, 686 F.2d 511, 524 (7th Cir.1982). These were wrongful acts, though not motivated by personal hostility to the victims, as in Olech.
We have applied the approach of Hilton in a number of cases: Crowley v. McKinney, 400 F.3d 965, 972 (7th Cir.2005); Fenje v. Feld, 398 F.3d 620, 628 (7th Cir.2005); Tuffendsam v. Dearborn County Bd. of Health, 385 F.3d 1124, 1127 (7th Cir.2004); Indiana Land Co., LLC v. City of Greenwood, 378 F.3d 705, 712-13 (7th Cir.2004); Discovery House, Inc. v. Consolidated City of Indianapolis, 319 F.3d 277, 283 (7th Cir.2003); Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir.2002); Cruz v. Town of Cicero, 275 F.3d 579, 587 (7th Cir.2001). The approach we suggest in this opinion is a variant of it.
The picture in other circuits (in ours too, alas, continuing to this day) is very mixed, though there is considerable support for Hilton’s approach. See SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir.2008); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir.2008) (“the defendants simply harbor animus against her in particular and therefore treated her arbitrarily” (emphasis in original)); Lindquist v. City of Pasadena, 525 F.3d 383, 387 n. 2 (5th Cir.2008); Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 849 (10th Cir.2005); Jennings v. City of Stillwater, 383 F.3d 1199, 1211-12 (10th Cir.2004); Williams v. Pryor, 240 F.3d 944, 951 (11th Cir.2001); Shipp v. McMahon, 234 F.3d 907, 916-17 (5th Cir.2000), overruled on other grounds by McClendon v. City of Columbia, 305 F.3d 314, 329 (5th Cir.2002) (en banc) (per curiam); Bryan v. City of Madison, 213 F.3d 267, 276-77 and n. 17 (5th Cir.2000). Some of our own cases, however, while accepting Hilton’s approach, leave open the possibility that a more liberal approach — one that would require a showing merely that the defendant had acted without a reasonable basis— might also be appropriate. See Hanes v. Zurick, 578 F.3d 491, 494 (7th Cir.2009); United States v. Moore, 543 F.3d 891, 898-99 (7th Cir.2008), and cases cited there.
Some cases in other circuits deem it an open question after Olech whether animus or, more broadly, improper personal motivations are required in a class-of-one case. See Cordi-Allen v. Conlon, 494 F.3d 245, 250 n. 3 (1st Cir.2007); Jicarilla Apache Nation v. Rio Arriba County, 440 F.3d 1202, 1210 (10th Cir.2006); Hayut v. State University of New York, 352 F.3d 733, 754 n. 15 (2d Cir.2003); DeMuria v. Hawkes, 328 F.3d 704, 707 n. 2 (2d Cir.2003); Giordano v. City of New York, 274 F.3d 740, 743 (2d Cir.2001). Other cases hold that such motivations aren’t required: Gerhart v. Lake County, 637 F.3d 1013, 1022 (9th Cir.2011); Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir.2008); Stotter v. University of Texas, 508 F.3d 812, 824 n. 3 (5th Cir.2007); Scarbrough v. Morgan County Board of Education, 470 F.3d 250, 261 (6th Cir.2006); TriHealth, Inc. v. Board of Commissioners, 430 F.3d 783, 788 (6th Cir.2005); Boone v. Spurgess, 385 F.3d 923, 932 (6th Cir.2004); Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir.2004). And *893 still others merely intone the formula recited by the Supreme Court in Olech: Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir.2010); Renchenski v. Williams, 622 F.3d 315, 337-38 (3d Cir.2010); Grider v. City of Auburn, 618 F.3d 1240, 1263-64 (11th Cir.2010); Association of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 549 (6th Cir.2007); Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1202 (11th Cir.2007); Barstad v. Murray, 420 F.3d 880, 884 (8th Cir.2005); Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 439 (4th Cir.2002); Costello v. Mitchell Public School Dist. 79, 266 F.3d 916, 921 (8th Cir.2001).
Judge Wood has made a commendable effort to harmonize the diverse strains of class-of-one jurisprudence. The key passage in her dissenting opinion is the following. We italicize the words and phrases in the opinion that persuade us that the effort at harmonization falls short:
a putative class-of-one complainant faces a much higher burden to show that the exercise of that discretion was irrational. This, we believe, is what our court and others have been driving at ever since Olech and Engquist in the suggestions that animus, or malice, or lack of any possible legitimate state purpose, plays a part in class-of-one cases. Those motive elements are not always necessary, as Olech illustrates, and indeed, it is not clear to us that Judge Posner’s separate opinion even takes that position. Nor should animus (or something similar) be seen as an alternative to a showing of irrationality. Instead, in the cases that do not rest on the state’s failure to follow a clear standard, the plaintiff has the burden of showing in the complaint some plausible reason to think that intentional and irrational discrimination has occurred. Pleading animus or improper purpose will often be an effective way to accomplish that goal.
So the police must be “irrational,” and the harm they cause the plaintiff must be “intentional,” actuated by “animus,” or by “malice” (which need not mean the same thing as “animus”), or must “lack ... any possible legitimate state purpose” (but how does that differ from being “irrational,” and in what sense is it a “motive element”?), and amount to “irrational discrimination.”
Judge Wood and the judges who have joined her opinion are aware that so loose a standard could invite a flood of cases, because the opinion imposes a high burden of proof on plaintiffs (though not on this plaintiff) and requires that the complaint itself “show ... some plausible reason to think that intentional, irrational discrimination has occurred.” But an open-ended list of factors for judges and jurors to mull over, a pile-up of adjectives, an invitation to consider unnamed further possibilities for establishing liability, and on top of all this a pleading requirement that may go beyond Iqbal yet is not applied to this case — so ad hoc an approach leaves the law of class-of-one discrimination in the confusion in which we found it when we agreed to hear the case en banc.
We need to simplify and we could do so by holding that a state actor commits class-of-one discrimination only when he intends to discriminate in the sense of intending to treat a person differently from other persons for reasons of a personal character, that is, reasons not grounded in his public duties. Olech was such a case. The Village was charged with having discriminated against the Olechs in violation of its own regulation in order to punish them for having sued it and won. The discrimination not only had no justification; it had been motivated by a desire for vengeance, which was no part of the Village officials’ public duty, as they well knew. In this case, in contrast, a plaintiff *894 complains about governmental conduct that is unavoidably highly discretionary, and to a degree almost random, as is commonplace at the lower rungs of law enforcement. Suppose a police car is lurking on the shoulder of a highway in a 45 m.p.h. zone, a car streaks by at 65 m.p.h., and the police do nothing. Two minutes later a car streaks by at 60 m.p.h. and the police give that driver a ticket. Can the second driver complain of a denial of equal protection if the police cannot come up with a rational explanation for why they ticketed him even though he wasn’t driving as fast as the first driver? If so, the courts will be swamped with class-of-one cases remote from the aims of the equal protection clause and unmanageable as a matter of judicial administration. Or suppose that an asylum officer, after interviewing an applicant for asylum, recommends that the applicant be turned down, while another asylum officer, in (as he knows) a rationally indistinguishable case, recommends that “his” applicant be granted asylum. Like situations are thus being treated differently; that is what unequal treatment, often called by lawyers and judges “irrational,” means. Both asylum officers are doing their duty, though the result is an irrational difference in treatment. Neither is guilty of discrimination.
We can learn from Hilton’s facts. For seven years Hilton and his neighbors in an apartment complex had been locked in a feud that began when neighbors saw him beating his Rottweiler puppy. He was cited for cruelty to animals and fined $500. Since that initial contretemps with his neighbors he had been cited or arrested some fifteen times on neighbors’ complaints for such transgressions as disorderly conduct, battery, and violating noise ordinances. His suit charged that the police had not been evenhanded in arbitrating, as it were, his feud with his neighbors. He had complained to the police many times. They had responded to all the complaints but had acted on only one. That was when he complained that a neighbor’s dog was barking loudly — and the police cited Hilton for disorderly conduct as well as the neighbor. The police had, in short, he claimed, enforced the law one-sidedly. And likewise in the present case: law enforcement authorities are accused of having refused to take seriously a complaint of gang violence in the form of “loud illegal car & motorcycle mufflers,” and a police lieutenant is alleged to have told the plaintiff that he would “take no action on your complaint because you are crazy.”
The challenge is to find amidst the welter of trivial “irrationalities” in discretionary actions by frontline public employees acts of discrimination of a character to warrant classification as denials of equal protection. A state trooper notices two cars being driven above the speed limit. One is a beautiful red convertible — an Aston Martin DBS Volante. The other, which is not speeding quite so fast, is a Toyota Prius. The trooper has never seen such a beautiful car as the Aston Martin (it should be beautiful — the sticker price is $290,861), so he signals the driver to pull over so that he can get a better look at the car, and, awed, lets the driver continue on his way without giving him a ticket. Later the trooper catches up with the driver of the Prius and, unimpressed, tickets him. The trooper’s behavior is not admirable, but it is not unrelated to his public duties; the Prius was speeding, albeit not so fast as the Aston Martin, and the trooper was therefore acting in accordance with his duties in ticketing the Prius’s driver.
Or suppose a state trooper decides to economize on having to think by ticketing only speeders in blue cars. He is not vindictive; he has nothing against people who drive blue cars; he doesn’t want to harm anyone; he’s not going to issue more tickets; all his victims are guilty; none is a *895 victim of unjustifiable harm; the trooper has just decided to rest his brain. His motive is irresponsible — when drivers get wind of it, those who don’t drive blue cars will speed more. So should an enterprising lawyer be encouraged to file a class action suit on behalf of drivers of blue cars who have been ticketed by this officer? (It would be a class-of-one suit even though there was more than one claimant; “class of one” refers not to the number of plaintiffs but to the fact that the plaintiff or plaintiffs is not suing as a member of an identifiable group, such as a race or a gender, or for that matter an industry. Engquist v. Oregon Dep’t of Agriculture, 553 U.S. 591, 601, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008).) If a driver complains to the police commissioner about the state trooper, and the commissioner says he can’t be bothered with the matter, is the commissioner guilty of a violation of equal protection because he has exhibited reckless indifference to his subordinate’s conduct? Or the municipality that employs the commissioner and has authorized him to decide such matters?
Random can be rational: a random audit by the Internal Revenue Service should not be thought “arbitrary” in a pejorative sense, though it is arbitrary in the sense that identically situated taxpayers who are not audited are being treated differently (ex post, not ex ante) from those who are. Randomization can be a proper and indeed indispensable tool of government, given limited governmental resources, as the dissenting opinion recognizes. (It can also be monstrous, as in decimation — the practice of killing every tenth soldier in a mutinous unit.) The examples we have given involve police behavior that while not vicious, not malicious, is not random, being instead actuated by personal motives that should not influence the performance of public duties. Yet it would be silly to make constitutional eases out of them, for remember that everyone ticketed in the examples deserved to be ticketed.
But “silliness” is not an operable standard; and while the courts generally agree that only egregious class-of-one cases should be actionable in the name of the Constitution, egregiousness is not an operable standard either but instead is a version of “I know it when I see it.” Jacobellis v. State of Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (concurring opinion). The principle de minimis non curat lex is applicable to constitutional cases, Commodity Futures Trading Commission v. Schor, 478 U.S. 833, 856, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (separation of powers); United States v. Jacobsen, 466 U.S. 109, 125, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (Fourth Amendment); Ingraham v. Wright, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (procedural due process); Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982) (freedom of speech), and could be used as a limiting principle, maybe in the speeding-ticket cases, though not in the present case, in which the plaintiff claims to have been driven out of town by the refusal of the police to respond to his complaint.
One is tempted to throw up one’s hands and banish challenges to police responses to complaints, and to other police investigatory decisions, from the class-of-one domain altogether, on the analogy of the Supreme Court’s decision in Engquist v. Oregon Dep’t of Agriculture, supra. The specific question in Engquist was whether public employees should be allowed to bring class-of-one suits against their employers; the Court held they could not. The Court went out of its way to discuss other situations in which low-level officials make discretionary rather than rule-based decisions:
Recognition of the class-of-one theory of equal protection on the facts in Olech *896 was not so much a departure from the principle that the Equal Protection Clause is concerned with arbitrary government classification, as it was an application of that principle. That case involved the government’s regulation of property. Similarly, the cases upon which the Court in Olech relied concerned property assessment and taxation schemes. We expect such legislative or regulatory classifications to apply “without respect to persons,” to borrow a phrase from the judicial oath----
What seems to have been significant in Olech and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. There was no indication in Olech that the zoning board was exercising discretionary authority based on subjective, individualized determinations — at least not with regard to easement length, however typical such determinations may be as a general zoning matter. Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement. This differential treatment raised a concern of arbitrary classification, and we therefore required that the State provide a rational basis for it....
There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such eases the rule that people should be “treated alike, under like circumstances and conditions” is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a “class of one” that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself — the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision.
553 U.S. at 602-04, 128 S.Ct. 2146 (citations omitted).
The quoted passage extends the Court’s analysis (though not its holding) from public employees supervisors to the police, who are engaged in “discretionary decisionmaking based on a vast array of subjective, individualized assessments,” and who therefore should not be liable for equal protection violations unless they base decisions on discriminatory classifica *897 tions such as race or sex that “implicate basic equal protection concerns.” Employment decisions, the Court pointed out, “are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify.... [Tjreating seemingly similarly situated individuals differently in the employment context is par for the course.” Id. at 604, 128 S.Ct. 2146. As it is in policing.
“When the Court went on to say that “an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action ... on the theory that other employees were not treated wrongfully,” that “on Engquist’s view, every one of these employment decisions by a government employer would become the basis for an equal protection complaint,” and that “the practical problem with allowing class-of-one claims to go forward in this context is not that it will be too easy for plaintiffs to prevail, but that governments will be forced to defend a multitude of such claims in the first place, and courts will be obliged to sort through them in a search for the proverbial needle in a haystack,” id. at 608, 128 S.Ct. 2146, it might have been speaking about this case. Other decisions make similar points. See, e.g., Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216-18 (10th Cir.2011). Two recent decisions apply Engquist's bar to class-of-one suits to discretionary action by state officials outside the employment context. Towery v. Brewer, 672 F.3d 650, 660-61 (9th Cir.2012) (per curiam); Novotny v. Tripp County, 664 F.3d 1173, 1179 (8th Cir.2011).
As Professor Powell has said, “It is easy to imagine reading the Court’s holding in Engquist as a strategic decision, intended to keep the judiciary out of an area in which it would be extremely difficult for courts to vindicate the constitutional norm without undue interference in the functioning of the political branches. Without a ‘clear standard’ to apply to personnel decisions, courts would find themselves simply second-guessing the executive or administrative officials who made the decisions on a discretionary basis in the first place, thereby ‘undermin[ingj the very discretion that such state officials are entrusted to exercise.’ The point of Engquist, on this reading, would not be that government is constitutionally free to make employment decisions based on whim or animus toward an individual employee, but rather that given the difficulty of ascertaining or even articulating the basis for many such decisions, it is preferable for the courts to abstain. Such deliberate judicial underenforcement would leave implementation of the norm to the political branches, not decree that what would be an illegitimate basis for governmental action in any other circumstance is constitutionally acceptable in government personnel decisions.” Powell, supra, 86 Wash. L.Rev. at 264. Engquist notes that “public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of them.” 553 U.S. at 609, 128 S.Ct. 2146. Americans have an even greater variety of protections against police misconduct, many of them of constitutional dignity.
Just months after the Engquist decision, our court, in United States v. Moore, supra, 543 F.3d at 899-901, held that just as public employees cannot bring class-of-one cases against their employer, so also prosecutorial and sentencing discretion is not to be fettered by class-of-one suits. (For this reason the plaintiff in this case cannot get to first base by arguing that the police should have gone after the bikers who he claims were making his life unbearable— the decision whether to arrest is a form of prosecutorial decision.) There is arbitrary variance among prosecutors in deciding *898 whether to prosecute a particular criminal, and among judges in deciding what sentence to impose on a particular criminal; there are also inconsistent prosecutorial decisions by individual prosecutors within a department and inconsistent sentences imposed by individual judges within a judicial system and indeed in the same court. Legally enforceable limitations on arbitrariness, such as uniform prosecutorial policy within a jurisdiction and standardized sentencing guidelines based on penological research, have largely been rejected. There would be chaos if persons charged with crime could base a defense on the ground that a similarly situated criminal suspect had not been charged, or if a person convicted of crime could knock out his sentence by showing that a similarly situated criminal had received a more lenient sentence, whether from the same or a different judge. Class-of-one claims cannot be interposed as defenses to criminal prosecutions, convictions, or sentences.
What unites the public-employer, prosecutorial discretion, and sentencing discretion cases at the deepest level of policy is not the existence of alternative remedies or the absence of harmful discrimination. It is the impediment to efficiency in government that would be created by allowing class-of-one litigation in areas in which frontline public officers — whether supervisors and other management-level personnel in public agencies, or prosecutors, or trial judges — exercise discretionary authority guided unavoidably by subjective, individualized factors that are bound to create disparate treatment. Class-of-one liability in such circumstances would not eliminate the disparities, because they are inherent in the exercise of discretion in such activities, but would foment litigation and disrupt law enforcement; some injustices would be corrected, but at an unacceptable price.
Police exercise a good deal of discretion, and not only in deciding which drivers to ticket for speeding. Police supervisors have to make decisions about the allocation of police resources across neighborhoods, commercial establishments, residences, and particular individuals, and about whom to investigate on suspicion of criminal activity, whom to arrest, whom merely to warn. Many of their decisions are made in emotional settings, involving angry and frightened people, and after the fact it is easy to point to mistakes. The police in this case decided not to take seriously Del Marcelle’s complaint about being harassed by motorcycle gangs. They thought him a nutcase. That is a judgment police officers have constantly to make. It is not a judgment that the federal courts should second guess in the name of equal protection. Should a federal judge order the police to investigate Del Marcelle’s charges? To arrest bikers whose motorcycles lack mufflers? To assign police officers to watch Del Marcelle’s house?
The Geinoslcy case that we cited earlier makes a nice contrast to this one. The plaintiff received 24 totally meritless parking tickets (often in circumstances in which it was physically impossible for the plaintiff to have committed a parking violation) in quick succession from police officers who appear to have been in cahoots with his estranged wife. We said that “absent a reasonable explanation, and none has even been suggested yet, the pattern adds up to deliberate and unjustified official harassment that is actionable under the Equal Protection Clause.” Geinosky v. City of Chicago, supra, 675 F.3d at 745. The defendants intentionally subjected the plaintiff to harm that they knew had no legal justification. Such a claim should survive the concerns expressed in Engquist.
*899 But the example must not be generalized to every case in which the exercise of discretion by frontline public officers results in arbitrary “classification” (in equal-protection speak) of persons otherwise similarly situated. A particular 911 call— say, reporting an auto theft or a burglary — may receive prompt attention, while another call reporting the same kind of crime a few blocks away is ignored. Probably there’s no rational basis for the difference in treatment. It cannot realistically be thought to exemplify “efficient systemic randomization.” But such differences are an unavoidable feature of discretionary administration of systems of government service, such as policing. As the Engquist decision points out, “it is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.” 553 U.S. at 604, 128 S.Ct. 2146.
The rational-basis test is an ingenious device for uncovering unconstitutional discrimination in legislative classifications. Reluctant to inquire into the personal motivations of lawmakers, judges ask instead whether an objective basis can be posited for a statutory classification challenged as discriminatory. But when “discrimination” is the norm because the “classification” is not legislative but instead is made ad hoc by frontline public officers, “discrimination” can’t by itself be the criterion for violation of the equal protection clause. More is needed in a suit challenging discretionary conduct as discriminatory and it makes sense that the more should relate to the public officer’s motivations, subjective though they are. For in such a case the claim depends on proof that the defendant singled out a private citizen for unfavorable treatment, which is different from a difference in treatment that arises incidentally as the inevitable consequence of the conferral of discretion on low-level officials. Inability to articulate a rationally acceptable reason for the difference is not a meaningful way to identify intentional discrimination.
This case is thus on the other side of the line from Geinosky, where singling out for purposes unrelated to official duty could readily be inferred. Which is not to say that proof of a bad motive is alone sufficient to establish liability in a class-of-one case. The plaintiff must plead and prove both the absence of a rational basis for the defendant’s action and some improper personal motive (which need not be hostility, but could be, for example, corruption) for the differential treatment. Thus, as we said earlier, our proposed standard requires the plaintiff to plead and prove intentional discriminatory treatment that lacks any justification based on public duties and that there be some improper personal motive for the discriminatory treatment. Some discretionary decisions will fail the rational-basis test, standing alone, but nonetheless should not be actionable because a degree of arbitrariness is inescapable in discretionary decisions by frontline government personnel. That is why we suggest that more must be shown — the personal motive to which we’ve referred. A bare allegation of bad motive, however, is not enough. In this case, in contrast to Geinosky, there is an allegation of arbitrariness, but not of improper motive. The police ignored the plaintiffs complaints of harassment by bikers on the ground that he was off his rocker. They failed to help him, but the complaint does not allege that they wanted to treat him worse than other citizens because of some personal motive. Rightly or wrongly they thought him a paranoid pest obsessed with motorcycle gangs.
To let the plaintiff plead over would not sort well with insistence that the class-of-one domain should be narrowly construed when a suit attacks discretionary action at *900 street level. The suit was rightly dismissed.