NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 26, 2012[*]
Decided August 1, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1633

| | |
|---|---|
| KENNETH JORDAN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 08-CV-1092 |
| | |
| MICHAEL COCKROFT, et al., | J.P. Stadtmueller, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Kenneth Jordan, a Wisconsin prisoner, appeals the grant of summary judgment against him in this suit under 42 U.S.C. § 1983, claiming that employees of the Department of Corrections (DOC) and the governor conspired to deny him equal protection—as a "class of one"—when his work-release program was terminated. We affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Jordan is serving a life sentence for his role four decades ago in an armed robbery in which a co-defendant shot and killed an off-duty police officer. Beginning in 2005 he was placed on work release. At that time the DOC classified Jordan into "community custody," the least-restrictive level for prisoners in its system; this classification qualified him for work release. He was transferred to a work-release facility in Milwaukee and eventually obtained full-time employment with Patrick Cudahy, Inc. But in 2007, defendant Michael Cockroft, the facility's superintendent, received a call from the daughter-in-law of the slain police officer; she had learned about Jordan's placement at the facility and found it inappropriate, given its proximity (across the street) to the site of the murder. Cockroft relayed this information to both the warden and defendant Mark Heise, the DOC's director of the Bureau of Offender Classification and Movement (BOCM). They arranged for Jordan to be transferred to a holding facility pending investigation.

Jordan then underwent a series of classification changes, with input from the DOC's Program Review Committee (PRC), whose members conduct inmate interviews and assess inmate placement. Heise adopted the PRC's initial recommendation that Jordan's classification be raised one level to "minimum custody," thereby rendering him ineligible for work release. The PRC based its recommendation on "expressed concern by the public and sentiments of the Milwaukee County Sheriff's Department and the Governor" that Jordan be moved outside of Milwaukee. Jordan in turn was transferred to Oakhill Correctional Institution in Oregon, Wisconsin. Jordan challenged the transfer and upgrade in classification, but defendant Gerald Konitzer, a corrections classification management supervisor at BOCM, upheld the ruling, noting that public sentiments were a valid consideration for purposes of classification status. A year later, the PRC recommended that Jordan's classification level be reduced, but Heise denied the recommendation. Heise later approved Jordan's reclassification to community custody, acknowledging that this classification would "afford option for work release." Jordan, however, denies that Oakhill offers any possibility for work release, and he still has no job outside the institution.

Jordan brought this § 1983 suit against Cockroft, Heise, Konitzer, various PRC members, and the governor, alleging that they violated the Fourteenth Amendment when they terminated his work-release program. At screening, *see* 28 U.S.C. § 1915A, the district court construed Jordan's complaint as alleging a class-of-one, equal-protection claim in that the defendants terminated his work release out of animus toward him because of his role in the police officer's murder.[1] The court permitted the claim to proceed to discovery, noting

---

[1] Jordan also alleges an Eighth Amendment claim and a Fourteenth Amendment due process claim, both of which the district court dismissed at the screening stage. Jordan contends that this was error, but we agree with the district court's decision to screen those

that Jordan sufficiently alleged (1) being treated differently than others similarly situated, (2) the absence of any rational basis for the difference in treatment, and (3) the defendants' illegitimate animus for their decision.

After discovery and the filing of cross-motions for summary judgment, the court concluded that the DOC had a rational basis for terminating Jordan's work release and granted summary judgment for the defendants. The court explained, first, that the DOC had the discretion to consider community objections to Jordan's classification and placement, and that Heise's decision not to uphold the PRC's recommendation was not based on a totally illegitimate animus. The court also found that Jordan provided no evidence that similarly situated prisoners had been treated more favorably.

On appeal Jordan challenges the district court's conclusion that he cannot succeed on his class-of-one claim and disputes the court's finding that adverse community reaction provided a rational basis for terminating his work release. He suggests that the DOC exaggerated the extent of the community reaction (in his view, apparently, the only opposition to his placement originated with the officer's daughter-in-law), that media reports of his release show that he was singled out for what he terms "political purposes," and that illegitimate animus can be inferred from the DOC's mishandling of his case.

The district court properly rejected Jordan's class-of-one claim in granting summary judgment for the defendants. An equal-protection claim brought by a "class of one" can succeed only if the plaintiff proves that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the different treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). As the district court here found, Jordan has not shown that similarly situated prisoners were treated differently. And though our court has divided over the necessity of showing illegitimate animus, the law is settled that a class-of-one plaintiff must show at least intentionally discriminatory treatment lacking a rational basis. *See Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 899 (7th Cir. 2012) (Posner, J., leading opinion) ("The plaintiff must plead and prove *both* the absence of a rational basis for the defendant's action *and* some improper personal motive . . . for the differential treatment."); *id*. at 913 (Wood, J., dissenting) (noting that plaintiff must plead and prove that a state actor lacked a rational basis for singling him out). Heise had the discretion under relevant state regulations to decide Johnson's work-release status based on several factors, including the public's perception, WIS. ADMIN. CODE DOC § 302.07(9), and Johnson has not shown that this

---

claims out of Jordan's complaint. Accordingly, we will not address the merits of those claims here.

decision lacked a rational basis. *See Engquist*, 553 U.S. at 602–03 (noting that it is more difficult to show irrational basis for decision where discretion plays a significant role); *Abcarian v. McDonald*, 617 F.3d 931, 939 (7th Cir. 2010) (same); *DeTomaso v. McGinnis*, 970 F.2d 211, 214 (7th Cir. 1992) ("Illinois has a rational explanation for caution in awarding work release status: slots are few, potential risks high. For both due process and equal protection purposes the judgment and sentence is the only justification the state need offer for retaining custody.").

AFFIRMED.