NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 19, 2014
Decided December 19, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1883

| | |
|---|---|
| JENNIFER LOVETTE-CEPHUS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 C 2118 |
| VILLAGE OF PARK FOREST, *Defendant-Appellee*. | Samuel Der-Yeghiayan, *Judge*. |

**O R D E R**

Jennifer Lovette-Cephus, an African American, appeals the grant of summary judgment against her in this equal-protection action against the Village of Park Forest under either a race-based or "class-of-one" theory. After attempting unsuccessfully to open a storefront bakery, Lovette-Cephus sued the Village for allegedly imposing stricter business-licensing requirements on her proposed bakery than on a similar business owned by a Caucasian woman. Because Lovette-Cephus has not provided evidence of the Village's municipal liability or discrimination, we affirm.

The Village prevailed at summary judgment, so we recite the facts in the light most favorable to Lovette-Cephus, the opposing party. *See Vance v. Ball State Univ.*, 646

F.3d 461, 465 (7th Cir. 2011), *aff'd*, 133 S. Ct. 2434 (2013). Lovette-Cephus applied in June 2011 to the Village's Economic Development and Planning Department for a license to operate an eat-in bakery at a downtown storefront. The Village's Health Department informed her that she had to install a three-compartment sink at her bakery, but she later realized that she could not afford to do so. She learned that she could avoid that requirement, however, if she prepared her baked goods at a rented commercial kitchen rather than at her bakery.

Lovette-Cephus then revised her application for a business license. Her bakery would feature an eating area for customers and serve only prepackaged baked goods that were prepared off premises at a rented commercial kitchen. Soon after, Jenise Ervin, the Village's Director of Public Health, notified Lovette-Cephus that, because her bakery was a "food service commercial business," Illinois's Food Service Sanitation Code, *see* ILL. ADMIN. CODE tit. 77, pt. 750, required it to have a three-compartment sink. According to Ervin, the plan to use a rented commercial kitchen "seems to be an arrangement that some temporary food vendors have that don't own a commercial business location"; those vendors, Ervin explained, have different "hand washing set up guidelines." Citing the cost of installing the three-compartment sink, Lovette-Cephus abandoned her plan to open a bakery in the Village.

Lovette-Cephus soon learned that in 2011 and 2012 the Village had granted a business license to a Caucasian woman, Tina Anderson, to sell baked goods. Anderson had initially considered converting her garage into a commercial kitchen, but decided not to do so after Village officials informed her that she would have to install a three-compartment sink and other equipment. Later, Anderson received a license to sell goods that were baked, packaged, and frozen at a commercial kitchen in Chicago and then stored in a freezer in her home. She used her home as a "base of operations" and sold her products mainly at the Village's farmers' market.

Lovette-Cephus then sued the Village for discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* 42 U.S.C. § 1983. She alleged that the Village had acted out of "ill-will" in "placing requirements" on her that it did not expect of "similarly situated white individuals." The Village understood Lovette-Cephus to allege discrimination based both on race and a "class-of-one" theory and eventually moved for summary judgment, arguing principally that Lovette-Cephus could not prove that the municipality was liable for the alleged discrimination.

In response Lovette-Cephus specified that her equal-protection rights had been violated by three Village employees who, she asserted, were final policymakers for the Village: Monica DeLord, an administrative assistant for the Economic Development and Planning Department; Ervin, the Director of Public Health; and John Ostenburg, the Village's Mayor. Lovette-Cephus asserted that DeLord and Ervin had treated her differently than Anderson by, among other things, "forc[ing]" her to install a three-compartment sink. Lovette-Cephus added that Ostenburg "did not bother to follow up" for "almost a year" after she e-mailed him regarding her difficulty in obtaining a business license.

The district court granted summary judgment for the Village. The court first addressed municipal liability and determined that Lovette-Cephus failed to show that the Village had an express policy or custom to discriminate against business-license applicants who are African American. Nor, the court continued, did Lovette-Cephus show that DeLord, Ervin, or Ostenburg "had final policymaking authority with respect to the Village's business licensing process." Although the court said nothing about the race-discrimination claim, it considered and rejected the merits of the class-of-one claim because Lovette-Cephus had not established that she was similarly situated to Anderson, who had not sought to operate a storefront bakery.

On appeal, Lovette-Cephus generally challenges the district court's conclusion that she failed to prove municipal liability based on actions taken by one of the Village's final policymakers. But as the district court properly explained, she did not submit any evidence showing that the individuals connected to the Village's business-licensing process had final policymaking authority. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). Lovette-Cephus fingered DeLord, Ostenburg, and Ervin as final policymakers who discriminated against her. DeLord and Ostenburg are dealt with easily: DeLord, an administrative assistant, by definition did not make final policy decisions, and even if Ostenburg, the Village's mayor, did, Lovette-Cephus's accusation that he failed to promptly respond to an e-mail does not assert a constitutional violation. As for Ervin, the Director of Public Health, the court was correct to say that Lovette-Cephus failed to point to state law or custom establishing that the Village "delegated authority to [Ervin] to make policy on its behalf." *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014); *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010).

In addition, Lovette-Cephus argues for the first time on appeal that the district court wrongly ruled that she failed to show municipal liability despite evidence that the Village maintained a policy or custom to deny operating licenses based on race. *See Monell*, 436 U.S. at 694. But she neither made this argument in the district court, nor submitted any evidence in support, so the district court properly concluded that she failed to prove municipal liability based on a discriminatory policy or custom.

Lovette-Cephus also challenges the district court's rejection of her underlying equal-protection claims. She says that because both she and Anderson sought business licenses to sell baked goods, they "would be expected to be held to the same health department standards" and thus the court should have recognized Anderson as a proper comparator with respect to both her race-based and class-of-one claims.

Our *Monell* analysis disposes of Lovette-Cephus's claims, *see Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 467 (7th Cir. 2001), but we also agree with the district court that Lovette-Cephus failed to prove discrimination. She did not submit any evidence supporting her race-discrimination claim either directly or indirectly under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Xiong v. Wagner*, 700 F.3d 282, 296 (7th Cir. 2012) (applying indirect method to equal-protection claim). Under the indirect approach, Lovette-Cephus had to show that she and Anderson, a Caucasian, were "similarly situated . . . in all relevant respects," but were nevertheless "treated differently." *Harvey v. Town of Merrillville*, 649 F.3d 526, 530–31 (7th Cir. 2011); *see Brown v. Budz,* 398 F.3d 904, 916 (7th Cir. 2005). But Lovette-Cephus did not submit any evidence contradicting Ervin's statement that she must install a three-compartment sink because a "food service commercial business" such as hers is subject to different health standards than a "temporary food vendor[]."[1] In fact, the two women's businesses differ in that Lovette-Cephus intended to open an eat-in storefront bakery and Anderson operated a home-based business selling goods mainly at a farmers' market. With respect to her class-of-one claim, Lovette-Cephus failed to show that the Village discriminated against her for "personal reasons," *Del Marcelle v. Brown Cnty. Corp.*, 680

---

[1] Temporary food-service establishments, according to Illinois's Food Service Sanitation Code, apparently are exempt from maintaining a three-compartment sink. The Code requires instead that they have available "[e]nough potable water . . . for food preparation, for cleaning and sanitizing utensils and equipment and for handwashing." *Compare* ILL. ADMIN. CODE tit. 77, § 750.1640 *with id.* § 750.820(a) (generally requiring a three-compartment sink).

F.3d 887, 889 (en banc) (Posner, J., lead opinion) (italics omitted), or that the Village intentionally discriminated against her and singled her out without any rational basis, *id.* at 913 (Wood, J., dissenting). *See Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 833 (7th Cir. 2012). Although she tried to prove the absence of rational basis by casting Anderson as one similarly situated who was treated more favorably, *see Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000); *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014), she did not establish that she and Anderson were similarly situated.

AFFIRMED.